1  JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney
2  JOANN M. SWANSON (CABN 88143)
Chief, Civil Division
3  NEILL T. TSENG (CABN 220348)
Assistant United States Attorney
4
5      450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7155
6  FAX: (415) 436-6748
neill.tseng@usdoj.gov
7
Attorneys for Defendants
8
UNITED STATES DISTRICT COURT
9
NORTHERN DISTRICT OF CALIFORNIA
10
OAKLAND DIVISION
11

| | | |
|---|---|---|
| 12  OUR CHILDREN'S EARTH FOUNDATION, a non-profit corporation, | ) ) ) | No. C 08-01461 SBA **E-FILING CASE** |
| 13                               Plaintiff, | ) ) | **DEFENDANTS' NOTICE OF MOTION** |
| 14                    v. | ) ) ) | **AND MOTION TO TRANSFER VENUE TO THE DISTRICT OF HAWAII** |
| 15  U.S. ENVIRONMENTAL PROTECTION AGENCY, STEPHEN L. JOHNSON, as | ) ) ) | Date:  July 29, 2008 |
| 16  Administrator of the United States Environmental Protection Agency, and | ) ) ) | Time: 1:00 p.m. Place: Courtroom 3, 3rd Floor |
| 17  WAYNE NASTRI as Regional Administrator of the United States | ) ) ) | Honorable Saundra Brown Armstrong |
| 18  Environmental Protection Agency, | ) ) | |
| 19                    Defendants. | ) ) ) | |

20
21
22
23
24
25
26
27
28

TABLE OF CONTENTS

I.      INTRODUCTION.................................................................................................4

II.     STATEMENT OF FACTS.....................................................................................5

III.    ARGUMENT AND AUTHORITIES...................................................................10

        A.      The Statutory Authority for Transfer of Venue.....................................10

        B.      This Case Could Have Been Brought in the District of Hawaii.............11

        C.      The Interests of Justice Support a Transfer of Venue............................12

        D.      The Remaining Relevant Factors Support a Transfer of Venue............14

                1.      Plaintiff's Choice of This Forum Has Marginal Relevance......14

                2.      All Other Relevant Factors Support a Transfer of Venue.........14

                        a.      Convenience of Parties and Witnesses...........................15

                        b.      The Ease of Access to Evidence.....................................15

                        c.      Feasibility of Consolidation with Other Claims............15

                        d.      Local Interest in the Controversy...................................15

                        e.      Relative Court Congestion.............................................16

IV.     CONCLUSION...................................................................................................17

1

## TABLE OF AUTHORITIES

2 <u>FEDERAL CASES</u>

3 <u>A.J. Industries, Inc. v. U.S. District Court for the Central District of California</u>, 503 F.2d 384

4        (9th Cir. 1974)....................................................................................................11,12

5 <u>Coffey v. Van Dorn Iron Works</u>, 796 F.2d 217, 220-21 (7th Cir. 1989).......................................10

6 <u>Cooper v. Department of Air Force</u>, 528 F.Supp. 472 (D.C. La. 1981).........................................13

7 <u>Decker Coal Co. v. Commonwealth Edison Co.</u>, 805 F.2d 834, 843 (9th Cir. 1986).......11, 14, 16

8 <u>Durham Productions, Inc. v. Sterling Film Portfolio, Ltd., Series A</u>, 537 F.Supp 1241, 1243

9        (S.D.N.Y 1982)..................................................................................................4, 15

10 <u>Ferrens v. John Deere Co.</u>, 494 U.S. 516, 522 (1989)....................................................................10

11 <u>Gulf Oil v. Gilbert</u>, 330 U.S. 501, 509 (1947)...............................................................................16

12 <u>Hoffman v. Blaski</u>, 363 U.S. 335 (1960)..................................................................................10, 11

13 <u>Jones v. GNC Franchising</u>, 211 F.3d 495, 498-99 (9th Cir. 2000)................................................11

14 <u>Keith v. Volpe</u>, 858 F.2d 467, 474 (9th Cir. 1988)........................................................................12

15 <u>Lane v. Department of Interior</u>, 2008 WL 1914744 at *9-10 (9th Cir. May 2, 2008)(for

16        publication)...............................................................................................................15

17 <u>Lead Industries Association v. Occupational Safety and Health Administration</u>, 610 F2d 70 (2nd

18        Cir. 1979).................................................................................................................13

19 <u>National Wildlife Federation v. Browner</u>, 237 F.3d 670, 675 (D.C. Cir. 2001)............................11

20 <u>Pacific Car & Foundry Co. v. Pence</u>, 403 F.2d 949, 954 (9th Cir. 1968)...............................11, 14

21 <u>Stewart Org., Inc. v. Ricoh Corp.</u>, 487 U.S. 22, 30 (1988)............................................................10

22 <u>Van Dusen v. Barrack</u>, 376 U.S. 612, 616 (1964).........................................................................10

23 <u>Ventress v. Japan Airlines</u>, 486 F.3d 1111, 1118 (9th Cir. 2007)................................................10

24 <u>Wiley v. Trendwest Resorts</u>, 2005 WL 1910934. *3 (N.D. Cal. August 10, 2005)...........4, 13, 15

25

26 <u>FEDERAL STATUTES</u>

27 5 U.S.C. § 552................................................................................................................4, 10, 11

28 28 U.S.C. § 1404(a)......................................................................................................10, 12, 16

1

33 U.S.C § 1251.................................................................................................5

2

33 U.S.C. § 1365...............................................................................................6

3

4

STATE STATUTES

5

H.R.S. Chapter 342D..................................................................................... 5,6

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    PLEASE TAKE NOTICE that on July 29, 2008 at 1:00 p.m. in the Courtroom of the

2   Honorable Saundra Brown Armstrong, United States District Judge, Courtroom 3, 3rd Floor,

3   United States District Court, 1301 Clay Street, Oakland, California, defendants the U.S.

4   Environmental Protection Agency, Stephen L. Johnson and Wayne Nastri, represented by the

5   United States Attorney for the Northern District of California, through Neill T. Tseng, Assistant

6   United States Attorney, will move the Court to transfer venue in this case to the District of

7   Hawaii under 28 U.S.C. § 1404(a).  The motion will be based on this notice, the memorandum of

8   points and authorities, the evidence submitted therewith, the Stipulation to Transfer Venue filed

9   concurrently herewith, the arguments of the parties, and such other matters as may be presented

10   to or considered by the Court.

**STATEMENT OF RELIEF**

12    Defendants move for an order transferring venue to the District of Hawaii.

**ISSUE TO BE DETERMINED**

14    Whether venue should be transferred to the District of Hawaii.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

17    Defendants seek to transfer this case to the District of Hawaii.  This case, brought under

18   the Freedom of Information Act, 5 U.S.C. § 552, alleges that the U.S. Environmental Protection

19   Agency ("USEPA") wrongfully failed to release records associated with its investigation of the

20   City and County of Honolulu's ("Honolulu's" or "CCH's") sewage collection and treatment

21   system.  The documents associated with USEPA's investigation are central to three lawsuits

22   before Judge David Ezra in the District of Hawaii, as well as ongoing settlement negotiations

23   being supervised by Magistrate Judge Kevin Chang in the District of Hawaii.  As this Court has

24   noted, "'[l]itgation of related claims in the same tribunal is strongly favored because it facilitates

25   efficient... proceedings and avoids ... inconsistent results'".  Wiley v. Trendwest Resorts, 2005

26   WL 1910934, at *3 (N.D. Cal. August 10, 2005)(quoting Durham Productions, Inc. v. Sterling

27   Film Portfolio, Ltd., Series A, 537 F. Supp. 1241, 1243 (S.D.N.Y 1982)).

28    USEPA's decision to withhold these documents turned on the potential impact the release

of these documents will have on the ongoing proceedings in Hawaii. The documents at issue in this case pertain Honolulu's compliance with the Clean Water Act - the fundamental matter at issue in the Hawaii proceedings. The documents, and the ongoing Hawaii proceedings, have no connection to this forum. This case will, almost certainly, be decided based on the administrative record generated by USEPA, so the location of relevant witnesses, documents, and other evidence will not be of concern. The District of Hawaii also has an interest in adjudicating this dispute, as it involves the privileges associated with litigation and settlement negotiations being conducted in that forum. Moreover, the matters involved in this case and the Hawaii cases are of substantial public interest in Hawaii. Additionally, the judicial docket is less congested in the District of Hawaii. Given the potential impact of this case on the Hawaii cases, the facts relevant to the transfer of venue favor the Court's granting of this motion.

## II. STATEMENT OF FACTS

The United States, on behalf of USEPA, and the State of Hawaii, on behalf of the Hawaii Department of Health ("HDOH") filed suit against Honolulu in October 1994 to address violations of the Federal Water Pollution Control Act, 33 U.S.C § 1251 et seq. (more commonly known as the Clean Water Act or CWA), and Hawaii's equivalent State law, H.R.S. Chapter 342D (the "1994 lawsuit"). The complaint in the 1994 lawsuit alleged, *inter alia*, that Honolulu had failed to adequately operate and maintain its sewage collection system, resulting in a substantial number of discharges of raw sewage (commonly referred to as "sanitary sewer overflows" or "SSOs").[1] The complaint in the 1994 lawsuit is attached as Exhibit 1 to Declaration of Hugh Barroll. The parties settled the 1994 lawsuit in 1995 with the entry of a Consent Decree ("1995 Consent Decree"). Exhibit 2 to Declaration of Hugh Barroll. Among

---

[1] The "sewage collection system" is a complex network of sewer pipes, force mains and sewage pump stations. In a sewage collection system, most sewers flow by gravity to low points in a collection system. To reach a wastewater treatment plant, sewage must be collected from these low points at pump stations. Pump stations pump sewage into force mains which lift sewage out of these low points to higher places where the sewage can again flow downhill. Sewage collection systems are vulnerable to failures if overtaxed by excessive flows or if allowed to deteriorate due to age or improper maintenance.

1   other things, the 1995 Consent Decree required Honolulu to undertake a 25 year program to

2   improve its sewage collection system.  1995 Consent Decree ¶ XXV.D.   The 1995 Consent

3   Decree remains in effect.  Declaration of Hugh Barroll at ¶ 3.  The District Court has retained

4   jurisdiction over the 1994 lawsuit to enforce the terms and conditions of the 1995 Consent

5   Decree.  1995 Consent Decree ¶ XXIV.

6          Honolulu failed to fully comply with the 1995 Consent Decree, and has continued to

7   operate its wastewater treatment and collection system in violation of the Clean Water Act.

8   Among other responses to the continued noncompliance, HDOH issued an administrative order

9   to Honolulu requiring it to take action to improve performance of its sewer force mains and

10  USEPA issued a series of administrative orders to address noncompliance at Honolulu's main

11  sewage treatment plants (commonly referred to as the Sand Island Treatment Plant and the

12  Honouliuli Treatment Plant).  Declaration of Hugh Barroll at ¶ 5.

13         During 2004 and 2005, USEPA, with the assistance of HDOH, undertook a

14  comprehensive assessment of Honolulu's sewage collection system to evaluate Honolulu's

15  compliance with the Clean Water Act and the terms of the 1995 Consent Decree.  Following

16  completion of the sewage collection system assessment, USEPA prepared an Audit Report

17  summarizing its conclusions.  Declaration of Hugh Barroll at ¶ 7.  USEPA and HDOH also

18  performed detailed inspections of the Sand Island and Honouliuli Treatment Plants to evaluate

19  compliance with the Clean Water Act and H.R.S. Chapter 342D at these facilities.  Following

20  completion of the inspections of the treatment plants, USEPA prepared Inspection Reports

21  summarizing its conclusions.  Declaration of Hugh Barroll at ¶ 7.

22         Also in 2004, Plaintiff, along with the Hawaii Chapter of the Sierra Club and Hawaii's

23  Thousand Friends (collectively the "Environmental Groups"), filed their own lawsuit against

24  Honolulu pursuant to the citizen suit provisions of the Clean Water Act, 33 U.S.C. § 1365 (the

25  "2004 citizen suit").  The Environmental Groups alleged that Honolulu was not properly

26  operating and maintaining its wastewater collection system, leading to unpermitted sanitary

27  sewer overflows, and that Honolulu's discharges from the Sand Island and Honouliuli Treatment

28  Plants were not in compliance with permit requirements.  See Sierra Club et al. v. City and

1   County of Honolulu, Civ. No. 04-00463 DAE (D.Haw.).   This litigation is still ongoing in the

2   U.S. District Court for the District of Hawaii before Judge Ezra, the same District Court Judge

3   with jurisdiction over the actions filed by USEPA and HDOH against Honolulu.

4          In order to comprehensively address all Honolulu's Clean Water Act violations, USEPA

5   and HDOH invited the Environmental Groups to join in negotiations with Honolulu in late 2005.

6   As part of this process, USEPA, HDOH and the Environmental Groups entered into a

7   Confidentiality Agreement in December 2005.  Exhibit 3 to Declaration of Hugh Barroll.  The

8   Confidentiality Agreement is designed to facilitate the sharing of certain written investigatory

9   materials which the parties agreed were  prepared "in anticipation of litigation."  See

10  Confidentiality Agreement, ¶ 8.   The parties also agreed that "all privileges shall be preserved"

11  and that "privileged information shall be protected from disclosure" to any third parties.

12  Confidentiality Agreement, ¶ 9.  Furthermore, the Confidentiality Agreement states that the

13  parties thereto "agree to consult with each other before producing documents relating to ...

14  [Honolulu's sewage treatment] and/or its collection system and/or ... [Honolulu], whether such

15  production is made voluntarily, in response to any discovery request, or pursuant to any other law

16  of regulation."  Confidentiality Agreement, ¶ 10.  To date, the parties have not consulted, or

17  requested consultation, under this or any other provision of the Confidentiality Agreement.  The

18  Confidentiality Agreement has not been terminated according to its terms, and remains in full

19  force and effect.

20         Following execution of the Confidentiality Agreement, the United States, the State of

21  Hawaii, the Environmental Groups and Honolulu began settlement negotiations.  As part of this

22  process, USEPA shared with the Environmental Groups a number of the documents at issue in

23  this matter, subject to the terms of the Confidentiality Agreement.  This includes such documents

24  as the Audit Report of Honolulu's collection system and settlement communications discussing

25  the findings of USEPA's and HDOH's investigations of Honolulu's sewage collection system

26  and treatment plants.  Declaration of Hugh Barroll at ¶ 14.

27          In March 2006, while settlement negotiations were ongoing, Honolulu's Beachwalk

28  Force Main in Waikiki ruptured, spilling approximately 48 million gallons of sewage into the

1    Ala Wai Canal.  Declaration of Hugh Barroll at ¶ 15.  On May 8, 2007, USEPA and DOH filed

2    an additional lawsuit against Honolulu for the Clean Water Act violations related to the Beach

3    Walk Force Main spill (the "2007 lawsuit").   The 2007 lawsuit is also before Judge Ezra.  The

4    USEPA, HDOH and Honolulu simultaneously lodged a proposed Stipulated Order (Exhibit 4 to

5    the Declaration of Hugh Barroll) which was narrowly tailored to address injunctive relief claims

6    associated with the Beachwalk Force Main spill.  Declaration of Hugh Barroll at ¶ 16.  The

7    Stipulated Order was entered by the Court, over the objections of the Environmental Groups, on

8    October 10, 2007.[2]   See United States et al. v. City and County of Honolulu, CV No. 07-00235

9    DAE-KSC (D.Haw.).  The Court's Order entering the Stipulated Order is attached as Exhibit 7 to

10   the Declaration of Hugh Barroll.

11          In the Stipulated Order, the United States, the State of Hawaii and Honolulu

12   acknowledged that additional compliance issues needed to be resolved, and that the parties

13   intended to enter into negotiations to resolve these issues:

14          The Parties expressly recognize that the filing of the Complaint limited to these
         specific claims and the filing of this Stipulated Order do not resolve and are without
15       prejudice to other claims of the Governments regarding compliance with the 1995
         Consent Decree, the Act, or State law, including, but not limited to, the Governments'
16       claims for civil penalties with regard to the matters set forth in this Complaint.

17          Following entry of this Stipulated Order, the Parties intend to negotiate in good
         faith a comprehensive remedy addressing all compliance issues associated with CCH's
18       wastewater system.

19   Stipulated Order at 2.  The Stipulated Order remains in effect and is under the continuing

20   jurisdiction of Judge Ezra in the District of Hawaii.  Stipulated Order at section XVI.

21          In addition to maintaining their independent enforcement action in the 2004 citizen suit

22   against Honolulu, in 2007, the Environmental Groups intervened in both the 1994 lawsuit and

23   the 2007 lawsuit.  In both cases, the Court adopted recommendations of the Magistrate imposing

24   conditions on the Environmental Groups' intervention.  The Court's Order granting the

25   Environmental Groups' motion to intervene in the 1994 lawsuit and the Magistrate Judge's

26   _____

27          [2]  As part of the United States' motion for entry of the Stipulated Order, USEPA
     submitted the *Declaration of JoAnn Cola in Support of United States' Request to Enter
28   Stipulated Order*, which Plaintiff references in its FOIA request detailed below.

1    recommendations setting conditions on that intervention are attached as Exhibit 5 to Declaration

2    of Hugh Barroll.  The Court's Orders granting the Environmental Groups motion to intervene in

3    the 2007 lawsuit and to adopt the Magistrate's Findings and Recommendations imposing

4    conditions on intervention are attached as Exhibit 6 to the Declaration of Hugh Barroll.  The

5    Magistrate's Findings and Recommendations as to the motion to intervene in the 2007 lawsuit

6    are also attached as Exhibit 6 to the Declaration of Hugh Barroll.

7           On September 18, 2007, the Plaintiff in this action submitted a request pursuant to the

8    Freedom of Information Act for USEPA records related to the Honolulu's sewage collection and

9    treatment system and, in particular, USEPA's investigations into these facilities discussed above.

10   This request was submitted on behalf of Plaintiff by the counsel for the Environmental Groups in

11   the 1994, 2004 and 2007 lawsuits.  Specifically, the FOIA request sought:

12          (1) [a]ll documents in EPA's possession reporting, listing, documenting and/or tabulating
            the discharge of raw or partially treated sewage (sometimes referred to as "sanitary sewer
13          overflows") from ... Honolulu's ...  sanitary sewer collection system from May 1, 2004
            through the final date that EPA searches its records for documents responsive to this
14          request;

15          (2) [a]ny Discharge Monitoring Reports ("DMRs") concerning the discharge of
            wastewater from ... [Honolulu's] ...  Sand Island wastewater treatment plant from April
16          2007 though the final date that EPA searches its records for documents responsive to this
            request; and
17
            (3) [a]ll documents in EPA's possession documenting, discussing, reporting or otherwise
18          concerning the comprehensive review of ... Honolulu's ... wastewater collection system
            and the Sand Island and Honoulili waste water treatment plants referred to in paragraphs
19          6 and 7 of the *Declaration of Joann Cola in Support of United States' Request to Enter
            Stipulated Order* filed in *United States et al. v. City and County of Honolulu*, Civ. No.
20          07-00235 DAE-KSC.[3]

21   The Declaration of JoAnn Cola referenced above is attached as Exhibit 8 to the Declaration of

22   Hugh Barroll.

23          USEPA released a substantial number of documents pursuant to this FOIA request.

24   USEPA is withholding no documents responsive to the second category of documents.  However,

25   _____

26          [3]  The Declaration of JoAnn Cola  referenced in this document request referred to
     USEPA's investigations into the Honolulu's sewage collection system and treatment plants in
27   2004 and 2005 discussed above. See footnote 2.  Ms. Cola is the EPA inspector with primary
     responsibility for oversight of Honolulu's sewage system, and its compliance with the Clean
28   Water Act.

1   USEPA withheld from release a number of documents responsive to the first and third categories

2   of documents sought on the grounds that their release would reveal attorney work product, would

3   reveal attorney-client communications, and/or would interfere with enforcement proceedings.

4   Documents that would disclose attorney work product or attorney-client communications are

5   exempt from disclosure pursuant to FOIA Exemption 5.  5 U.S.C. § 552(b)(5).  Documents

6   which would interfere with enforcement proceedings are exempt from disclosure pursuant to

7   FOIA Exemption 7(A).  5 U.S.C. § 552(b)(7)(A).  Following an appeal to USEPA Headquarters,

8   which upheld the decision to withhold the documents at issue here, Plaintiff filed this action.

9                            **III.  ARGUMENT AND AUTHORITIES**

10  **A.    THE STATUTORY AUTHORITY FOR A TRANSFER OF VENUE.**

11          A motion to transfer venue is governed by 28 U.S.C. § 1404(a), which allows a district

12  court, for the convenience of parties and witnesses, and in the interest of justice, to transfer any

13  civil action to any other district or division where it might have been brought.  Because the broad

14  federal venue statutes often result in inconvenient forums, Congress intended section 1404(a) to

15  remedy this situation by authorizing the transfer of actions to a more convenient forum.  Ferrens

16  v. John Deere Co., 494 U.S. 516, 522 (1990).  Section 1404(a) was designed to protect litigants,

17  witnesses and the public against unnecessary inconvenience and expense,  Van Dusen v. Barrack,

18  376 U.S. 612, 616 (1964), and to ensure "systemic integrity and fairness" in the judicial process,

19  Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 30 (1988), and the "efficient administration of the

20  court system."  Coffey v. Van Dorn Iron Works, 796 F.2d 217, 220-21 (7th Cir. 1989).  The

21  decision as to whether transfer is appropriate under 1404(a) "involves subtle considerations" that

22  are best left to the broad discretion of the district court.  Ventress v. Japan Airlines, 486 F.3d

23  1111, 1118 (9th Cir. 2007)(citation omitted).

24          As a threshold matter, the Court must determine if the action subject to the motion to

25  transfer "might have been brought" by the Plaintiff in the transferee district (i.e., the district to

26  which the moving party seeks to transfer the action).  Hoffman v. Blaski, 363 U.S. 335, 343-44

27  (1960).  Next, the Court must determine if the transfer would serve "the interest of justice" and

28  "the convenience of parties and witnesses."  In making this determination, the Court may

1  consider: (1) the plaintiff's choice of forum; (2) the parties' convenience; (3) the witnesses'

2  convenience; (4) ease of access to the evidence; (5) familiarity of each forum with the applicable

3  law; (6) the feasibility of consolidation with other claims; (7) any local interest in the

4  controversy; and (8) the relative court congestion and time to trial in each forum.  Jones v. GNC

5  Franchising, 211 F.3d 495, 498-99 (9th Cir. 2000).

6      The moving party bears the burden of showing that the balance of conveniences weighs

7  heavily in favor of transfer in order to overcome the strong presumption in favor of the plaintiff's

8  choice of forum.  Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir.

9  1986).  But a plaintiff's choice of forum is entitled only to minimal consideration if the operative

10  facts have not occurred within the forum of original selection and that forum has no particular

11  interest in the parties or the subject matter of the litigation.  Pacific Car & Foundry Co. v. Pence,

12  403 F.2d 949, 954 (9th Cir. 1968).

13  **B.    THIS CASE COULD HAVE BEEN BROUGHT IN THE DISTRICT OF HAWAII.**

14      For purposes of transfer, a case "could have been brought" in a District if venue would

15  have been proper in transferee District had the case been filed there initially, Hoffman v. Blaski,

16  363 U.S. at 344, or the case could have been filed as a claim in an existing action in the

17  transferee District, A.J. Industries, Inc. v. U.S. District Court for the Central District of

18  California, 503 F.2d 384, 387 (9th Cir. 1974).  Plaintiff could have filed this case as a

19  supplemental crossclaim in either the 1994 lawsuit or the 2007 lawsuit in the District of Hawaii.[4]

20  Therefore, the threshold determination that this action "could have been brought" in the District

21  of Hawaii is satisfied, and this case is eligible for transfer to the District of Hawaii.[5]

22

23  _____

24  [4] An after-arising claim, like this crossclaim, may be brought through a supplemental pleading, see discussion below.

25  [5] Because Our Children's Earth Foundation is California corporation (unlike the other
26  Environmental Groups in the Hawaii cases), venue would technically be improper in Hawaii had
this action been initially filed there.  See 5 U.S.C. § 552(a)(4)(B)(venue is proper in the District
27  in which the Plaintiff resides or has its principal place of business, the District where the records
are kept, or in the District of Columbia).  However, following transfer to Hawaii, venue will be
28  no bar to proceeding with this action, since the United States waives any objections to venue by
seeking transfer to Hawaii. See National Wildlife Federation v. Browner, 237 F.3d 670, 675
(D.C. Cir. 2001)(objections to venue may be waived).

1

2          Moreover, this standard is met even if Plaintiff does not have an unqualified right to add

3     its claim to the ongoing action in the transferee District.  In A.J. Industries, the Ninth Circuit

4     recognized that the plaintiff would have needed leave of Court to bring the action it filed in

5     California as a claim in ongoing litigation in Delaware.  Nonetheless, the Court determined that,

6     although the action could not have been filed originally in the District of Delaware, it could be

7     transferred there.  In reaching that conclusion, the Court noted that the existence of ongoing,

8     related litigation in the transferee District "insures that a plaintiff will not be transferred to a

9     forum where it has not appeared and is not already engaged in litigation with the defendant."  503

10    F.2d at 388.  The Court concluded that 28 U.S.C. § 1404(a) does not require that a plaintiff have

11    an absolute right to originate an action in the transferee District, and the fact that the filing of a

12    claim in the transferee District would have required leave of Court was not germane to

13    determining whether an action could be transferred to that District.

14         In much the same circumstances, Plaintiff could have sought leave of Court in the District

15    of Hawaii to bring a crossclaim against the United States in either the 1994 lawsuit or 2007

16    lawsuit in Hawaii pursuant to Federal Rule of Civil Procedure 15(d).  This rule provides that,

17    "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a

18    supplemental pleading setting out any transaction, occurrence, or event that happened after the

19    date of the pleading to be supplemented."  In order for a motion to supplement a pleading to be

20    granted, the subject matter of the supplemental pleading "should have some relation to the claim

21    set forth in the initial pleading."  Keith v. Volpe, 858 F.2d 467, 474 (9th Cir. 1988).  As

22    explained above and discussed in more detail below, the subject matter of this claim is intimately

23    related to the claim set forth in the pleadings in the 1994 lawsuit and 2007 lawsuit in the District

24    of Hawaii.  The Freedom of Information Act request at issue in this claim seeks documents

25    directly related to USEPA's investigations into Honolulu's sewage collection and treatment

26    systems - the subject matter of both the 1994 lawsuit and 2007 lawsuit in the District of Hawaii.

27    **C.     THE INTERESTS OF JUSTICE SUPPORT A TRANSFER OF VENUE**

28         As this Court has noted, "[t]he 'interests of justice' consideration is the most important

1    factor a court must consider, and may be decisive in a transfer motion even when all other factors

2    point the other way." Wiley v. Trendwest Resorts, Inc., 2005 WL 1910934 at *3 (N.D. Cal. Aug.

3    10, 2005)(citation omitted). "In evaluating the 'interests of justice,' the pendency of related

4    actions in the proposed transferee forum is a highly persuasive factor." Wiley, at *3 (citing A.J.

5    Industries).

6          In the context of litigation under the Freedom of Information Act, a number of Courts

7    have held that the pendency of related litigation in the transferee forum is a compelling reason for

8    transfer to that forum.  In Lead Industries Association v. Occupational Safety and Health

9    Administration, 610 F.2d 70 (2d Cir. 1979), the Plaintiff sought to require the release pursuant to

10   FOIA of two draft reports concerning the health effects of lead.  Concurrently with the

11   proceedings under FOIA, litigation was underway in the D.C. Circuit challenging an OSHA rule

12   setting standards for workplace exposure to lead.  610 F.2d at 74.  While transfer was not sought

13   in the Lead Industries case, Judge Friendly observed that

14        [c]onvenience clearly would have been served by LIA's bringing this proceeding in the
          District Court for the District of Columbia....  If there should again be a case in this
15        circuit where disclosure under FOIA is avowedly sought to support a review proceeding
          in another circuit, the district court should seriously consider a stay pending a FOIA
16        application to the reviewing court or a transfer of its own motion.

17   610 F.2d at 79.  See also Cooper v. Department of Air Force, 528 F.Supp. 472 (D.C. La.

18   1981)(FOIA litigation seeking documents relevant to wrongful death case should be transferred

19   to forum of wrongful death case to facilitate efficient proceedings and avoid conflicting results).

20         In this case, the interests of justice strongly favor transfer to the District of Hawaii.  The

21   documents at issue in this proceeding are all highly relevant to three actions before Judge Ezra in

22   the District of Hawaii.  Plaintiff is a party to all three of these actions.  USEPA is a party to two

23   of these actions.  One of USEPA's primary grounds for withholding these documents is that

24   release of these documents would interfere with its ongoing enforcement actions against

25   Honolulu.  The Court with jurisdiction over these enforcement proceedings is in the best position

26   to evaluate the merits of this position.  Moreover, the Confidentiality Agreement at issue in this

27   matter was entered into by the Environmental Groups (including Plaintiff), USEPA and HDOH

28   to facilitate the prosecution of these enforcement actions, and to aid in settlement negotiations.

1  The Court that has jurisdiction over these enforcement proceeding and is supervising settlement

2  negotiations is in the best position to evaluate the impact of the Confidentiality Agreement on

3  Plaintiff's FOIA claim.

4  **D. THE REMAINING RELEVANT FACTORS SUPPORT A TRANSFER OF VENUE.**

5       All of the remaining factors relevant to the venue transfer decision – with the exception

6  of Plaintiff's choice of this forum – support a transfer of venue to the District of Hawaii.

7  Plaintiff's choice of this district is entitled to little weight here, given that Plaintiff, through its

8  counsel in this action, is actively engaged in litigation regarding the matters at issue in this case

9  in the District of Hawaii, and that this forum has no connection to any of the operative facts of

10  this case.

11       **1.    Plaintiff's Choice of This Forum Has Marginal Relevance.**

12       Ordinarily, a Plaintiff's choice of a particular forum deserves considerable deference.

13  Decker Coal Co., 805 F.2d at 843.  But, in this case, the Court should accord Plaintiff's choice of

14  venue minimal deference for two reasons.  First, Plaintiff has actively sought to litigate on

15  matters directly related to the documents at issue in this case in the District of Hawaii.

16  Therefore, Plaintiff will not be inconvenienced if it is required to litigate this claim in that forum.

17       Second, the Ninth Circuit has held that a plaintiff's choice of forum deserves only

18  minimal consideration if the operative facts have not occurred within the forum of original

19  selection and that forum has no particular interest in the parties or the subject matter of the

20  litigation.  Pacific Car & Foundry Co., 403 F.2d at 954.  In this case, the documents at issue all

21  pertain to events and circumstances in the District of Hawaii.  That is where Honolulu operates

22  its sewage collection and treatment system, where USEPA's oversight of Honolulu occurs, where

23  USEPA has identified problems with Honolulu's sewage collection and treatment system, and

24  where USEPA is pursuing responses to the problems it has identified.  These are the central

25  matters Plaintiff is putting at issue in its FOIA request, and in filing this action.  See Complaint

26  at ¶¶ 7,8.

27       **2.    All Other Relevant Factors Favor Transfer of Venue.**

28       Every other factor that the Ninth Circuit has found relevant to a transfer of venue

1    determination supports transfer here.

2           **a.**      **Convenience of Parties and Witnesses.**

3          The parties' convenience favor a transfer of venue. Both Plaintiff and Defendant are

4    actively engaged in litigation related to the documents at issue in this proceeding in the District

5    of Hawaii.  By transferring this action to the District of Hawaii, this proceeding can be heard by

6    the same Judge hearing those actions, and the consideration of this matter can be coordinated

7    with pretrial proceedings and discovery in those matters.

8          The convenience of witnesses is unlikely to be a relevant factor because FOIA litigation

9    is generally decided on summary judgment and discovery is not normally allowed.  Lane v.

10   Department of Interior, 2008 WL 1914744 at *9-10 (9th Cir. May 2, 2008)(for publication).

11          **b.**      **The Ease of Access to Evidence.**

12         Evidence is equally accessible  in either this forum or in the District of Hawaii.  The

13   withheld documents are the only relevant evidence.

14          **c.**      **Feasibility of Consolidation with Other Claims**

15         As noted above in Section II., this claim could be filed as crossclaim in a supplemental

16   pleading to either the 1994 lawsuit or the 2007 lawsuit in the District of Hawaii, so consolidation

17   is feasible.  When consolidation is feasible, "'[l]itigation of related claims in the same tribunal is

18   strongly favored because it facilitates efficient, economical and expeditious pre-trial proceedings

19   and discovery and avoids ... inconsistent results.'"  Wiley, 2005 WL 1910934 at *3 (quoting

20   Durham Productions, Inc., 537 F. Supp at 1243).  In this case, Judge Ezra is intimately familiar

21   with Plaintiff's and Defendant's enforcement efforts against Honolulu in both the 1994 lawsuit

22   and 2007 lawsuit filed in the District of Hawaii by the United States, and Plaintiff's 2004 citizen

23   suit, also in the District of Hawaii.  It would be much more efficient for the judge who is familiar

24   with these issues to preside over the current claim, rather than to ask a judge with no prior

25   knowledge to do so.

26          **d.**      **Local Interest in the Controversy.**

27         This District has no local interest in adjudicating this matter.  In contrast, the District of

28   Hawaii has a substantial interest in adjudicating this matter.  The underlying FOIA request and

the withheld documents concern USEPA's investigation of Honolulu's compliance with the

Clean Water Act. The environmental issues associated with Honolulu's Clean Water Act

compliance are of direct concern to the citizens of Hawaii. Similarly, Plaintiff's allegations

regarding the adequacy of USEPA's oversight of Honolulu's compliance with the Clean Water

Act are primarily a matter of concern to the citizens of Hawaii. Significant public interest in the

proposed transferee District is an important reason for transferring an action. Gulf Oil v. Gilbert,

330 U.S. 501, 509 (1947).

### e.    Relative Court Congestion.

The relative congestion of the transferor and transferee courts is a factor in determining

whether to transfer venue. Decker Coal Co., 805 F.2d at 843. This factor, too, favors transfer.

According to the Administrative Office of the United States Courts' *2007 Annual Report of the*

*Director: Judicial Business of the United States Courts* (2007 Annual Report), of which this

Court may take judicial notice under Fed. R. Evid. 201, the District of Hawaii had 625 pending

civil cases in 2007 (a 13.2% decrease from 2006 levels), compared to 8,318 in this District (a

17.2% increase from 2006 levels). 2007 Annual Report at 141,

http://www.uscourts.gov/judbus2007/JudicialBusinespdfversion.pdf (last visited May 15, 2008).

The District of Hawaii had 461 pending criminal cases in 2007 (a 5.5% decrease from 2006

levels), compared to 885 in this District (a 2.7% decrease from 2006 levels). Id. at 210. The

median time to dispose of a civil case in the District of Hawaii in 2007 was 19.7 months for

cases going to trial, compared to 23.3 months in this District. Id. at 177. The median time to

dispose of a criminal case in the District of Hawaii for 2007 was 7.5 months for all cases,

compared to 11.0 months in this District. Id at 258. The weighted total number of filings per

judgeship in the District of Hawaii for 2007 was 297, compared to 624 in this District. Id. at

413. By all of these metrics, the District of Hawaii has a less congested docket than this District.

The pertinent pages from this report are attached as Exhibit 9 to the Declaration of Erica Pencak.

The Court should find that all relevant factors under 28 U.S.C. § 1404(a) favor the

transfer of this case to the District of Hawaii.

//

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IV.  CONCLUSION**

For the reasons stated above, the Court should grant this motion and transfer this case to the District of Hawaii.

DATED:  June 13, 2008                    Respectfully submitted,

JOSEPH P. RUSSONIELLO
United States Attorney


_____/s/_____
NEILL T. TSENG
Assistant United States Attorney

DEFS.' MOT. TO TRANSFER VENUE TO D. HAW.
C 08-01461 SBA                    17