JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney
JOANN M. SWANSON (CABN 88143)
Chief, Civil Division
NEILL T. TSENG (CABN 220348)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7155
    FAX: (415) 436-6748
    neill.tseng@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| OUR CHILDREN'S EARTH FOUNDATION, a non-profit corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY, STEVEN L. JOHNSON, as Administrator of the United States Environmental Protection Agency, and WAYNE NASTRI as Regional Administrator of the United States Environmental Protection Agency,<br><br>    Defendants. | No. C 08-01461 SBA<br>**E-FILING CASE**<br><br>**DEFENDANTS' [PROPOSED] ORDER GRANTING MOTION TO TRANSFER VENUE TO THE DISTRICT OF HAWAII**<br><br>Date: July 29, 2008<br>Time: 1:00 p.m.<br>Place: Courtroom 3, 3rd Floor<br>Honorable Saundra Brown Armstrong |

**I. INTRODUCTION.**

    On July 29, 2008, this court heard oral argument on Defendants' Motion to Transfer Venue to the District of Hawaii (the "Motion"). Having considered the Motion, Defendants' memorandum of points and authorities in support of the motion, Plaintiff's memorandum in opposition to the motion, Defendants' reply brief in support of the Motion, the evidence before the court, and the arguments of the parties, the court hereby GRANTS Defendants' Motion to Transfer Venue to the District of Hawaii and ORDERS the clerk of court to transfer this case to the District of Hawaii.

**II. STATEMENT OF FACTS.**

The United States, on behalf of USEPA, and the State of Hawaii, on behalf of the Hawaii Department of Health ("HDOH") filed suit against Honolulu in October 1994 to address violations of the Federal Water Pollution Control Act, 33 U.S.C § 1251 et seq. (more commonly known as the Clean Water Act or CWA), and Hawaii's equivalent State law, H.R.S. Chapter 342D (the "1994 lawsuit").  The complaint in the 1994 lawsuit alleged, *inter alia*, that Honolulu had failed to adequately operate and maintain its sewage collection system, resulting in a substantial number of discharges of raw sewage (commonly referred to as "sanitary sewer overflows" or "SSOs").[1]  The complaint in the 1994 lawsuit is attached as Exhibit 1 to Declaration of Hugh Barroll.  The parties settled the 1994 lawsuit in 1995 with the entry of a Consent Decree ("1995 Consent Decree").  Exhibit 2 to Declaration of Hugh Barroll.  Among other things, the 1995 Consent Decree required Honolulu to undertake a 25 year program to improve its sewage collection system.  1995 Consent Decree ¶ XXV.D.   The 1995 Consent Decree remains in effect.  Declaration of Hugh Barroll at ¶ 3.  The District Court has retained jurisdiction over the 1994 lawsuit to enforce the terms and conditions of the 1995 Consent Decree.  1995 Consent Decree ¶ XXIV.

Honolulu failed to fully comply with the 1995 Consent Decree, and has continued to operate its wastewater treatment and collection system in violation of the Clean Water Act. Among other responses to the continued noncompliance, HDOH issued an administrative order to Honolulu requiring it to take action to improve performance of its sewer force mains and USEPA issued a series of administrative orders to address noncompliance at Honolulu's main sewage treatment plants (commonly referred to as the Sand Island Treatment Plant and the Honouliuli Treatment Plant).  Declaration of Hugh Barroll at ¶ 5.

---

[1] The "sewage collection system" is a complex network of sewer pipes, force mains and sewage pump stations.  In a sewage collection system, most sewers flow by gravity to low points in a collection system.  To reach a wastewater treatment plant, sewage must be collected from these low points at pump stations.  Pump stations pump sewage into force mains which lift sewage out of these low points to higher places where the sewage can again flow downhill. Sewage collection systems are vulnerable to failures if overtaxed by excessive flows or if allowed to deteriorate due to age or improper maintenance.

DEFS.' [PROPOSED] ORDER GRANTING MOT. TO TRANSFER VENUE TO D. HAW.
C 08-1461 SBA

1  During 2004 and 2005, USEPA, with the assistance of HDOH, undertook a comprehensive assessment of Honolulu's sewage collection system to evaluate Honolulu's compliance with the Clean Water Act and the terms of the 1995 Consent Decree. Following completion of the sewage collection system assessment, USEPA prepared an Audit Report summarizing its conclusions. Declaration of Hugh Barroll at ¶ 7. USEPA and HDOH also performed detailed inspections of the Sand Island and Honouliuli Treatment Plants to evaluate compliance with the Clean Water Act and H.R.S. Chapter 342D at these facilities. Following completion of the inspections of the treatment plants, USEPA prepared Inspection Reports summarizing its conclusions. Declaration of Hugh Barroll at ¶ 7.

Also in 2004, Plaintiff, along with the Hawaii Chapter of the Sierra Club and Hawaii's Thousand Friends (collectively the "Environmental Groups"), filed their own lawsuit against Honolulu pursuant to the citizen suit provisions of the Clean Water Act, 33 U.S.C. § 1365 (the "2004 citizen suit"). The Environmental Groups alleged that Honolulu was not properly operating and maintaining its wastewater collection system, leading to unpermitted sanitary sewer overflows, and that Honolulu's discharges from the Sand Island and Honouliuli Treatment Plants were not in compliance with permit requirements. See Sierra Club et al. v. City and County of Honolulu, Civ. No. 04-00463 DAE (D.Haw.). This litigation is still ongoing in the U.S. District Court for the District of Hawaii before Judge Ezra, the same District Court Judge with jurisdiction over the actions filed by USEPA and HDOH against Honolulu.

In order to comprehensively address all Honolulu's Clean Water Act violations, USEPA and HDOH invited the Environmental Groups to join in negotiations with Honolulu in late 2005. As part of this process, USEPA, HDOH and the Environmental Groups entered into a Confidentiality Agreement in December 2005. Exhibit 3 to Declaration of Hugh Barroll. The Confidentiality Agreement is designed to facilitate the sharing of certain written investigatory materials which the parties agreed were prepared "in anticipation of litigation." See Confidentiality Agreement, ¶ 8. The parties also agreed that "all privileges shall be preserved" and that "privileged information shall be protected from disclosure" to any third parties.

DEFS.' [PROPOSED] ORDER GRANTING MOT. TO TRANSFER VENUE TO D. HAW.
C 08-1461 SBA

3

Confidentiality Agreement, ¶ 9.  Furthermore, the Confidentiality Agreement states that the parties thereto "agree to consult with each other before producing documents relating to ... [Honolulu's sewage treatment] and/or its collection system and/or ... [Honolulu], whether such production is made voluntarily, in response to any discovery request, or pursuant to any other law of regulation."  Confidentiality Agreement, ¶ 10.  To date, the parties have not consulted, or requested consultation, under this or any other provision of the Confidentiality Agreement.  The Confidentiality Agreement has not been terminated according to its terms, and remains in full force and effect.

Following execution of the Confidentiality Agreement, the United States, the State of Hawaii, the Environmental Groups and Honolulu began settlement negotiations.  As part of this process, USEPA shared with the Environmental Groups a number of the documents at issue in this matter, subject to the terms of the Confidentiality Agreement.  This includes such documents as the Audit Report of Honolulu's collection system and settlement communications discussing the findings of USEPA's and HDOH's investigations of Honolulu's sewage collection system and treatment plants.  Declaration of Hugh Barroll at ¶ 14.

In March 2006, while settlement negotiations were ongoing, Honolulu's Beachwalk Force Main in Waikiki ruptured, spilling approximately 48 million gallons of sewage into the Ala Wai Canal.  Declaration of Hugh Barroll at ¶ 15.  On May 8, 2007, USEPA and DOH filed an additional lawsuit against Honolulu for the Clean Water Act violations related to the Beach Walk Force Main spill (the "2007 lawsuit").   The 2007 lawsuit is also before Judge Ezra.  The USEPA, HDOH and Honolulu simultaneously lodged a proposed Stipulated Order (Exhibit 4 to the Declaration of Hugh Barroll) which was narrowly tailored to address injunctive relief claims associated with the Beachwalk Force Main spill.  Declaration of Hugh Barroll at ¶ 16.  The Stipulated Order was entered by the Court, over the objections of the Environmental Groups, on October 10, 2007.[2]  See United States et al. v. City and County of Honolulu, CV No. 07-00235

---

[2] As part of the United States' motion for entry of the Stipulated Order, USEPA submitted the *Declaration of JoAnn Cola in Support of United States' Request to Enter Stipulated Order*, which Plaintiff references in its FOIA request detailed below.

DEFS.' [PROPOSED] ORDER GRANTING MOT. TO TRANSFER VENUE TO D. HAW.
C 08-1461 SBA

DAE-KSC (D.Haw.).  The Court's Order entering the Stipulated Order is attached as Exhibit 7 to the Declaration of Hugh Barroll.

In the Stipulated Order, the United States, the State of Hawaii and Honolulu acknowledged that additional compliance issues needed to be resolved, and that the parties intended to enter into negotiations to resolve these issues:

> The Parties expressly recognize that the filing of the Complaint limited to these specific claims and the filing of this Stipulated Order do not resolve and are without prejudice to other claims of the Governments regarding compliance with the 1995 Consent Decree, the Act, or State law, including, but not limited to, the Governments' claims for civil penalties with regard to the matters set forth in this Complaint.
>
> Following entry of this Stipulated Order, the Parties intend to negotiate in good faith a comprehensive remedy addressing all compliance issues associated with CCH's wastewater system.

Stipulated Order at 2.  The Stipulated Order remains in effect and is under the continuing jurisdiction of Judge Ezra in the District of Hawaii.  Stipulated Order at section XVI.

In addition to maintaining their independent enforcement action in the 2004 citizen suit against Honolulu, in 2007, the Environmental Groups intervened in both the 1994 lawsuit and the 2007 lawsuit.  In both cases, the Court adopted recommendations of the Magistrate imposing conditions on the Environmental Groups' intervention.  The Court's Order granting the Environmental Groups' motion to intervene in the 1994 lawsuit and the Magistrate Judge's recommendations setting conditions on that intervention are attached as Exhibit 5 to Declaration of Hugh Barroll.  The Court's Orders granting the Environmental Groups motion to intervene in the 2007 lawsuit and to adopt the Magistrate's Findings and Recommendations imposing conditions on intervention are attached as Exhibit 6 to the Declaration of Hugh Barroll.  The Magistrate's Findings and Recommendations as to the motion to intervene in the 2007 lawsuit are also attached as Exhibit 6 to the Declaration of Hugh Barroll.

On September 18, 2007, the Plaintiff in this action submitted a request pursuant to the Freedom of Information Act for USEPA records related to the Honolulu's sewage collection and treatment system and, in particular, USEPA's investigations into these facilities discussed above. This request was submitted on behalf of Plaintiff by the counsel for the Environmental Groups in

the 1994, 2004 and 2007 lawsuits.  Specifically, the FOIA request sought:

>   (1) [a]ll documents in EPA's possession reporting, listing, documenting and/or tabulating the discharge of raw or partially treated sewage (sometimes referred to as "sanitary sewer overflows") from ... Honolulu's ... sanitary sewer collection system from May 1, 2004 through the final date that EPA searches its records for documents responsive to this request;
>
>   (2) [a]ny Discharge Monitoring Reports ("DMRs") concerning the discharge of wastewater from ... [Honolulu's] ... Sand Island wastewater treatment plant from April 2007 though the final date that EPA searches its records for documents responsive to this request; and
>
>   (3) [a]ll documents in EPA's possession documenting, discussing, reporting or otherwise concerning the comprehensive review of ... Honolulu's ... wastewater collection system and the Sand Island and Honoulili waste water treatment plants referred to in paragraphs 6 and 7 of the *Declaration of Joann Cola in Support of United States' Request to Enter Stipulated Order* filed in *United States et al. v. City and County of Honolulu*, Civ. No. 07-00235 DAE-KSC.[3]

The Declaration of JoAnn Cola referenced above is attached as Exhibit 8 to the Declaration of Hugh Barroll.

USEPA released a substantial number of documents pursuant to this FOIA request. USEPA is withholding no documents responsive to the second category of documents.  However, USEPA withheld from release a number of documents responsive to the first and third categories of documents sought on the grounds that their release would reveal attorney work product, would reveal attorney-client communications, and/or would interfere with enforcement proceedings. Documents that would disclose attorney work product or attorney-client communications are exempt from disclosure pursuant to FOIA Exemption 5.  5 U.S.C. § 552(b)(5).  Documents which would interfere with enforcement proceedings are exempt from disclosure pursuant to FOIA Exemption 7(A).  5 U.S.C. § 552(b)(7)(A).  Following an appeal to USEPA Headquarters, which upheld the decision to withhold the documents at issue here, Plaintiff filed this action.

---

[3] The Declaration of JoAnn Cola  referenced in this document request referred to USEPA's investigations into the Honolulu's sewage collection system and treatment plants in 2004 and 2005 discussed above. See footnote 2. Ms. Cola is the EPA inspector with primary responsibility for oversight of Honolulu's sewage system, and its compliance with the Clean Water Act.

### III. LEGAL STANDARD.

A motion to transfer venue is governed by 28 U.S.C. § 1404(a), which allows a district court, for the convenience of parties and witnesses, and in the interest of justice, to transfer any civil action to any other district or division where it might have been brought. Because the broad federal venue statutes often result in inconvenient forums, Congress intended section 1404(a) to remedy this situation by authorizing the transfer of actions to a more convenient forum. Ferrens v. John Deere Co., 494 U.S. 516, 522 (1990). Section 1404(a) was designed to protect litigants, witnesses and the public against unnecessary inconvenience and expense, Van Dusen v. Barrack, 376 U.S. 612, 616 (1964), and to ensure "systemic integrity and fairness" in the judicial process, Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 30 (1988), and the "efficient administration of the court system." Coffey v. Van Dorn Iron Works, 796 F.2d 217, 220-21 (7th Cir. 1989). The decision as to whether transfer is appropriate under 1404(a) "involves subtle considerations" that are best left to the broad discretion of the district court. Ventress v. Japan Airlines, 486 F.3d 1111, 1118 (9th Cir. 2007)(citation omitted).

As a threshold matter, the Court must determine if the action subject to the motion to transfer "might have been brought" by the Plaintiff in the transferee district (i.e., the district to which the moving party seeks to transfer the action). Hoffman v. Blaski, 363 U.S. 335, 343-44 (1960). Next, the Court must determine if the transfer would serve "the interest of justice" and "the convenience of parties and witnesses." In making this determination, the Court may consider: (1) the plaintiff's choice of forum; (2) the parties' convenience; (3) the witnesses' convenience; (4) ease of access to the evidence; (5) familiarity of each forum with the applicable law; (6) the feasibility of consolidation with other claims; (7) any local interest in the controversy; and (8) the relative court congestion and time to trial in each forum. Jones v. GNC Franchising, 211 F.3d 495, 498-99 (9th Cir. 2000).

The moving party bears the burden of showing that the balance of conveniences weighs heavily in favor of transfer in order to overcome the strong presumption in favor of the plaintiff's choice of forum. Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir.

1986).  But a plaintiff's choice of forum is entitled only to minimal consideration if the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter of the litigation.  Pacific Car & Foundry Co. v. Pence, 403 F.2d 949, 954 (9th Cir. 1968).

**IV.  DISCUSSION.**

Plaintiff did not oppose, and therefore conceded, Defendants' arguments that transfer to the District of Hawaii would serve the interest of justice, the convenience of parties and witnesses, and all other relevant factors.[4]  In fact, Plaintiff expressly waived any objection to transferring venue as long as jurisdiction would be proper.  Opp. Mem. at 5.  The only question Plaintiff raised was whether jurisdiction in the District of Hawaii would be proper.  Jurisdiction would be proper for three reasons: first, jurisdiction is established under the federal question statute, 28 U.S.C. § 1331, because this FOIA action arises under a law of the United States; second, the statute Plaintiff relies on, 5 U.S.C. § 552(a)(4)(B), is a venue provision, not a jurisdictional one, and Plaintiff has waived any objection to venue; and third, even if §552(a)(4)(B) could be said to govern jurisdiction over original actions, Plaintiff's complaint qualifies for transfer to the District of Hawaii because the case "might have been brought" as a crossclaim to an existing action in Hawaii.

**A.     SECTION 552(a)(4)(B) ESTABLISHES VENUE, NOT JURISDICTION.**

Plaintiff argues that § 552(a)(4)(B) grants subject matter jurisdiction rather than venue to specific district courts, and that the District of Hawaii would not have jurisdiction to hear the instant FOIA claim under that statute.  Although it appears to be an issue of first impression in

---

[4] Plaintiff asserts that the documents at issue have some connection to the instant forum, Opp. Mem. at 4, but does not refute or oppose any of Defendants' arguments that the documents concern the U.S. Environmental Protection Agency's investigation of Honolulu's compliance with the Clean Water Act, which is of direct concern to the citizens of Hawaii, Mot. at 15-16.

the Ninth Circuit,[5] one district court has expressly analyzed the issue and concluded that in FOIA cases, jurisdiction is established under 28 U.S.C. § 1331[6] because the subject matter presents a federal question, while venue is established under § 552(a)(4)(B):

> Subject matter jurisdiction, venue, personal jurisdiction and service of process are related but independent concepts and all four requirements must be satisfied in every case. See 4 Wright & Miller, Federal Practice and Procedure § 1063 at 329 (2002). In the present case, the docket indicates that service of process and personal jurisdiction have been satisfied. **Subject matter jurisdiction has been established because the FOIA presents a federal question under 28 U.S.C. § 1331.** Thus, the only remaining question is whether venue is proper in the Eastern District of Wisconsin.
>
> As to venue, the FOIA provides,
>
> On complaint, the district court of the United States in the district in which the complainant resides, or has principal place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.
>
> 5 U.S.C. § 552(a)(4)(B).
>
> **Section 552(a)(4)(B) is a venue provision statute and not a jurisdiction conferring statute.** Jones v. United States Nuclear Regulatory Comm'n, 654 F. Supp. 130 (D.D.C. 1987). Venue for an FOIA claim is proper in any district in which the complainant resides or has its principal place of business, the district in which the records are situated, or in the District of Columbia. In re Scott, 228 U.S.

---

[5] The Ninth Circuit cases cited by Plaintiff, Opp. Mem. at 3, do not address the issue raised here. Spurlock v. Federal Bureau of Investigation, 69 F.3d 1010 (9th Cir. 1995), addressed whether the FBI had to disclose documents that the district court had already determined to be exempt under FOIA, and did not concern venue at all. Similarly, Cal-Almond v. U.S. Dep't of Agriculture, 960 F.2d 105 (9th Cir. 1992), discussed whether the Department of Agriculture's lists of almond growers were properly exempt from disclosure under FOIA, and did not address venue.

Nor did Baizer v. U.S. Dep't of the Air Force, 887 F. Supp. 225 (N.D. Cal. 1995), address venue. In that case, Judge Smith stated that "[u]nder 5 U.S.C. § 552(a)(4)(B), federal subject matter jurisdiction in a FOIA case is dependent on a showing that an agency has (1) 'improperly' (2) 'withheld' (3) 'agency records.'" Id. at 226-27 (citation omitted). Judge Smith concluded that Supreme Court opinions stored in an Air Force computer database are not "agency records" and do not have to be disclosed under FOIA. Id. at 229.

[6] 28 U.S.C. § 1331 states in its entirety, "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

DEFS.' [PROPOSED] ORDER GRANTING MOT. TO TRANSFER VENUE TO D. HAW.
C 08-1461 SBA

App. D.C. 278, 709 F.2d 717, 720 (D.C. App. 1983). O'Neill v. United States Dep't of Justice, 2007 WL 983143, slip op. at *6 (E.D. Wis. 2007) (emphasis added).

Consistent with this analysis, district courts within the Ninth Circuit have described § 552(a)(4)(B) as a venue provision. For example, this very court stated that "**venue** is not proper in this district" when the requirements of § 552(a)(4)(B) were not satisfied because the plaintiff resided in Kansas and the records were located in Washington, D.C. and Hawaii. Keen v. Federal Bureau of Investigation, 1997 WL 671711, *1 (N.D. Cal. 1997) (emphasis added). Likewise, the district court for the District of Arizona described section 552(a)(4)(B) as "[t]he FOIA **venue** provision." Haswell v. Nat'l R.R. Passenger Corp., 2006 WL 839067, slip op. at *1 (D. Ariz. 2006) (emphasis added).

In support of its position, Plaintiff cites two cases from the district court for the District of Columbia decided in the 1980s. See Opp. Mem. at 4.[7] More recently, however, that court has stated that "[u]nder the FOIA **venue** statute, 5 U.S.C. 552(a)(4)(B), **venue** is always proper in the District of Columbia." Boggs v. United States, 987 F. Supp. 11, 18 n.4 (D.D.C. 1997) (emphasis added). Moreover, the United States Court of Appeals for the District of Columbia has characterized the FOIA section as a venue statute in at least two published decisions. See Lykins v. United States Dep't of Justice, 725 F.2d 1455, 1462 n.7 (D.C. Cir. 1984) (stating that "Congress explicitly laid venue in FOIA cases" in the courts outlined in § 552(a)(4)(B)); In re Scott, 709 F.2d 717, 720 (D.C. Cir. 1983) (describing § 552(a)(4)(B) as "the applicable FOIA venue provision"); accord Banks v. Partyka, 2007 WL 2693180, slip op. at *5 (W.D. Okla. 2007) ("Under both FOIA and the Privacy Act, venue is proper in the district where claimant resides, in the district where agency records are situated, or in the District of Columbia."). These holdings of the D.C. Court of Appeals and the recent holding of the D.C. district court in Boggs

---

[7] Plaintiff also cites Weber v. Coney, 642 F.2d 91, 93 (5th Cir. 1981), but that case addressed the question of whether a case was properly transferred between two divisions of the same district, not, as here, whether a case may be properly transferred between two different districts.

DEFS.' [PROPOSED] ORDER GRANTING MOT. TO TRANSFER VENUE TO D. HAW.
C 08-1461 SBA

are entitled to appropriate deference. See Scott, 709 F.2d at 720 (noting that Congress believed District of Columbia courts had "substantial expertise in working with the FOIA") (internal quotations omitted); Matlack, Inc. v. U.S. EPA, 868 F. Supp. 627, 630 & n.3 (D. Del. 1994) (noting that the federal courts in the District of Columbia have "long been on the leading edge" of interpreting the FOIA). In conclusion, because this FOIA action arises under a federal statute, jurisdiction is proper in either the Northern District of California or the District of Hawaii.

**B. REGARDLESS OF WHETHER SECTION 552(a)(4)(B) CONFERS JURISDICTION OR VENUE, TRANSFER TO HAWAII IS PROPER BECAUSE PLAINTIFF'S FOIA CLAIM COULD HAVE BEEN BROUGHT AS A CROSSCLAIM THERE.**

Even if § 552(a)(4)(B) was deemed to govern jurisdiction as to original actions filed under FOIA, original jurisdiction is not required for purposes of transfer. As Defendants explained in their motion at 11, there are two methods by which a case "might have been brought" in a district for purposes of transfer: (1) if original jurisdiction would have existed in the transferee district (citing Hoffman v. Blaski, 363 U.S. 335, 344 (1960)), or (2) if the case could have been filed as a claim in an existing action in the transferee district (citing A.J. Indus., Inc. v. U.S. Dist. Court for the Central Dist. of Cal., 503 F.2d 384, 387 (9th Cir. 1974)). Plaintiff did not specifically oppose this two-method test in its opposition memo or proffer any law or argument as to why this test is not good law, and therefore conceded the test.

Nevertheless, Plaintiff asserts that transfer to Hawaii would be improper because original jurisdiction could not exist there, stating erroneously that "28 U.S.C. § 1404(a) only allows a transfers *(sic)* to district courts where a Plaintiff's complaint could have originally been filed." Opp. Mem. at 2. Plaintiff offers no legal support for this assertion, which is clearly wrong in light of the two-method test stated above that is the product of binding Supreme Court and Ninth Circuit authority. The practical effect of accepting Plaintiff's assertion would be to eliminate from the test the second basis for jurisdiction (allowing transfer if a case could have been filed as a claim in an existing action), thereby overruling controlling Ninth Circuit precedent under A.J. Indus. This court declines Plaintiff's attempt to circumvent the Ninth Circuit's holding in A.J. Indus. through the back door.

1   The two-method test remains good law, and under that test, even if original jurisdiction
2   did not lie in the District of Hawaii under § 552(a)(4)(B), the instant case could have been filed
3   as a crossclaim in lawsuits commenced in the District of Hawaii by the U.S. Environmental
4   Protection Agency in 1994 and 2007 in which OCE intervened.  See Mot. at 12.  Plaintiff did not
5   specifically analyze or refute any of Defendants' arguments as to why OCE could have brought
6   the instant action as a crossclaim in Hawaii, beyond Plaintiff's generalized assertion that §
7   552(a)(4)(B) is a jurisdictional statute.

8   Finally, § 552(a)(4)(B) nowhere states that the jurisdiction it confers (if any) is conferred
9   to the exclusion of other federal statutes or rules such as § 1331, § 1404(a), Rule 13(g) (allowing
10  for crossclaims against a coparty), or Rule 15(d) (allowing for supplemental pleadings).  Nor
11  does Plaintiff cite any case holding this.  Thus, even if § 552(a)(4)(B) confers jurisdiction rather
12  than addresses venue, transfer would still be proper because the instant action could have been
13  brought as a crossclaim in the District of Hawaii.

### III.   CONCLUSION

For the foregoing reasons, the court GRANTS Defendants' Motion to Transfer Venue to the District of Hawaii and ORDERS the clerk of court to transfer this case to the District of Hawaii.

IT IS SO ORDERED.

DATED: _____

HON. SAUNDRA B. ARMSTRONG
United States District Judge

DEFS.' [PROPOSED] ORDER GRANTING MOT. TO TRANSFER VENUE TO D. HAW.
C 08-1461 SBA